Case number 20-5006, Cause of Action Institute, Appellant v. Office of Management and Budget, White House, and United States Department of Agriculture. Mr. Mulvey for the Appellant, Mr. Pham for the Appellees. Good morning, counsel. Mr. Mulvey, please proceed when you're ready. Good morning, your honors. May it please the court. My name is Ryan Mulvey and I represent the Appellant, Cause of Action Institute. This case presents the question of whether internet browsing history records are subject to agency control and therefore, disclosable under the Freedom of Information Act. As this court explained in Judicial Watch v. Secret Service, the four-factor BRCA test is the default standard for analyzing agency control in the usual case. And here, three of the four BRCA factors cut strongly in favor of agency control. Before you get to that, when you talk about how they cut strongly, you understand this is a de novo review. That's correct, your honor. We're not bound by the district court's conclusion that those three factors cut in your favor. That is true. I'm not at all sure that they do is the reason I'm raising that. You may wish to tell us why this meets each of those factors. Don't assume that we're going to calmly accept what the district judge found in your favor on that. I accept that, your honor, and recognize it. I think that the record supports the district court's conclusion as to three of the four factors, and I do intend to address those. So at least with respect to the first factor, the intent to retain or relinquish control, here the record is clear that the appellee agencies set retention setting for browsing history. With the record, the JA at least ambiguously contains language that person is using certain devices at least, and I think it would probably explain to everybody, could delete these sooner than the time set by the agency. The time set by the agency, there was an automatic deletion, but some of them that didn't work on them, they did delete them manually, and as far as the record shows, anybody could delete them sooner than that time. That was a drop-dead time, so that the agency wasn't retaining control if the individual had the ability and the authority apparently to delete the browsing history sooner. So you're right, your honor, that there is some ambiguity as to the browsers on cell phone devices. I think it is clear, though, with respect to desktop computers, that the browsing settings were controlled by the agency and individual employees. As far as I can tell from the record, maybe I'm missing something, that was the time at which there was going to be an automatic deletion. It did not specify that the individual user could manually delete prior to the expiration of the automatic deletion. Does it? No, there is some ambiguity there, but I think it's right to assume that within the retention period, an individual employee could have the authority to manually delete a record, but I'm not sure that that's dispositive to intent to retain or relinquish control. It would certainly seem to weaken the force of your statement that clearly the agency had control, wouldn't it? Well, I think an important consideration there with respect to the retention settings is that an individual employee would not have authority to expand retention of their records. No, no, no, no, that seems to be the record, but as far as we can tell from the record, he had the authority to delete. So doesn't that fly in the face of a conclusion that the agency retained all control over that disposition? Not when you're talking about a record, I think, Your Honor, that isn't going to be subject to something like the Federal Records Act. So this circuit has made clear in both Bureau of National Affairs and Consumer Federation of America that records management rules, including the disposition of a record, are not going to be dispositive to the control question whether a particular record is subject to the FOIA. FOIA's definition of an agency record and what would be subject to disclosure is broader than the definition of a federal record. In that respect, so long as the record exists at the time a request is filed, then it could be subject, it could be subject to disclosure. And again, it's true that the agency has given individual employees within the retention period, it seems, the authority to delete individual browsing history entries. But that's within the agency's authority to grant that discretion. And I'm not sure that that destroys the overall intent. There's no reason that the agency couldn't have decided to deprive individual employees of their ability to delete these There's nothing in the record regarding whether or not the particular internet browsing history records at issue and the officials identified in Cause of Action Institute's requests have, in fact, attempted to delete these files. Neither of the agencies make clear that they applied the control test to internet browsing history records that they actually reviewed. And that's probably... Oh, it looks like we lost a connection. Yeah, I had been hearing noises in the background. Had you all been hearing a ringing sound before he went? I only heard the chimes at 10 o'clock, I think. Oh, is that what that was? I believe so. Anne, do we have a way to bring back Mr. Mulvey? Chief Judge, I am going to have him call him so he can participate by phone. Okay. Thank you. He seems to be frozen in place. Okay. And Anne, we can stop the timer running if you have the ability to do that. I have a connection with Mr. Mulvey. He's going to be joining us by phone. I restarted my Zoom. I apologize for that. Okay. I'm not quite sure what happened there. I'm sorry, now I've forgotten where I was. You may want to move on to the other parts of the test anyway at this point. I'm not trying to take over, Chief Judge. Sure. No, I appreciate that, Your Honor. And if there's any aspect of that that I haven't covered, I'm happy to answer a follow-up question. Turning to the second Burka factor, the same agencies, OMB and USDA, did concede that they have the ability to use internet browsing histories. I question whether they use it within the terms of the act. The use they referred to making of it would be in the case of a disciplinary investigation or rather than in the normal business of the agency, right? Well, Your Honor. Having a Zoom problem again. Yeah. Maybe we can have Mr. Mulvey continue by telephone instead of by video if it's going to be a repeating issue. Chief Judge, I am calling Mr. Mulvey again. Thank you. Chief Judge, Mr. Mulvey has now joined us by phone. Okay. Please, Mr. Mulvey, if you're on, proceed with your response to Justice Hill on the use question. Let me go just a little farther with what I was going to say about use in terms of the use in the Burka analysis. If, by way of analogy, if somebody brought in in the physical world, as opposed to the cyber world, some contraband, pornography or something evidencing espionage, the agency could certainly make use of that in a disciplinary or even criminal investigation, but that would not be used within the terms of the Burka analysis, would it? Am I muted? Can you hear me, Your Honor? Yes. Yes. Well, I think it would, Your Honor. You do think it would? Okay. It would be a separate question whether or not a record that's used in that way would then become exempt, but whether or not a statutory exemption would apply, I think it is a secondary question, the foundational question. No, even just for the Burka analysis, is that a use in the terms of what the court meant in the Burka analysis? I think so. It's not a disciplinary investigation, would be an operation of the agency. But would it be such as would make this a record of the agency? That's the question here is we're trying to determine whether this is a record of the agency, and if the only use the agency could ever make of it would be evidentiary use in a proceeding outside the agency's normal business. Is that what the Burka test was designed to ask as far as making this a record? Should that make it a record? Would that make a porn book that the employee brought in part of a record of the agency because they could use it against him in a disciplinary? I think it could be. It's going to be a fact-specific analysis. I think part of the difference with that example, Your Honor, is that all of the other factors would cut against agency control. And you would also have a question as to whether it has been obtained under the first prong of tax analysts. Here, I mean, the government didn't really raise any dispute as to whether the first prong of tax analysts had been satisfied. There's an acknowledgment, and the district court repeated this as well, that these records are created within the agency. But again, this is not a review for error. This is a de novo review we're making as to whether this is an agency record. Right, and I understand that. I understand that, Your Honor, but these records are created automatically in the course of agency employees undertaking their daily tasks. What's the use that you're relying on here? Well, I think part of the... Well, first of all, we would suggest that use needn't be dispositive. So if three of the four BRCA factors cut in favor of control, then actual use under the third factor isn't going to be dispositive. There's also a background issue here which pertains to the issue of discovery in that, as both appellant and amicus have pointed out, there's nothing in the record about how the actual individual employees here, the officials identified in cause of actions request, use their internet browsing history records. That's completely absent, that sort of evidence, from any of the declarations that were offered by the government. Why, Mr. Mulvey, why is that the relevant inquiry as opposed to how the agency itself uses this record? Well, agencies, and I believe it was Judge Sentelle put it this way in his opinion in CEI versus OSTP, an agency acts through its employees. And I don't believe that there's any case law in FOIA to suggest that we ought to distinguish between a record creator and others within the agency for the purposes of addressing actual use under the third BRCA factor. I mean, browser histories are, I think, in some ways a bit unusual type of record, if they even are a record, right? Because a person makes internet searches for whatever purpose, to find restaurant reservations, to research something they're working on. And the record itself is created by the browser or by the agency settings of the browser, right? It's not creation of a record in the way as, say, writing a memo or something like that. I mean, do you think that makes a difference here? Well, I think it does, particularly for whether or not Bureau of National Affairs and the totality of the circumstances test ought to be the appropriate one. Now, of course, we argue that BRCA, which is the default in this circuit, is most appropriate. But because the record is created automatically by an agency system, the internet browser on an agency computer, that sort of quintessential aspect of a personal record is totally absent. Namely, that the record was created for the purpose of personal use. But we already know, for example, from our cases that I mean, my law clerks have no idea what this even is, but I think some of us here can remember the days in which you got a note that told you that you got a phone call from a particular number and you need to return that call. And that's not used for personal purposes, that's used for business purposes. And it is, in some physical sense, a record because it's a document that documents something that happened in the course of business. But we still don't consider that to be an agency record for purposes of FOIA. And it's hard for me to see how if that's not an agency record, how a mere history that a browser puts together of sites that have been visited, as to which there's no indication that the agency gives any use to that whatsoever, nonetheless is a record. Well, I think two thoughts on that, Your Honor. First, with respect to the telephone message slips and the case law in the BNA line of cases, that's only one aspect that was considered to determine that those sorts of things are not agency records because the relevant test is totality. Right. But if you just focus on that one dimension, and I know you've got your argument that it's outweighed by other considerations, but on that one dimension, what's the comparison that helps you? Well, I mean, I think, again, you just have to look, and we addressed this in our brief, at the substance of what the telephone slip would be conveying as compared to what an internet browsing history record would convey. It's not merely a URL. I mean, the fact that the URL is something that you can then access yourself, a requester who gets a copy of the browsing history record, they're able to actually view the substance of the content that an individual agency employee was viewing, presumably for work-related purposes, and that's very different than just a telephone number. Of course, you could try to call a telephone number, but you may not be assured of cooperation from the person who picks up the phone to tell you what- Right, but don't you know, the slip tells you who called, right? Usually, yeah. It may. It may just tell you the phone number. I mean, it depends on... That's going to be fact-specific. It's going to depend on what the secretary or personal assistant was recording on the message slip. You probably don't ever remember getting those slips, but some of us do, and they said, John Smith called you from such and such a number. Please return his call. I never saw one that didn't have similar information on it, and that's the way things used to be before there was such a millennium. Sure. Could I ask you about the fourth element? Could I ask you about the fourth element? In what way is this integrated into the record system or files of the... And that or, or of, apparently, is something you considered a misstatement. I've forgotten which is correct, but anyhow, in what way is it integrated in the fourth factor analysis? I think, Your Honor, in the same way that something like an email record would be incorporated into agency files. Well, is this in the same database with anything else in the agency system of files or files? Is it in the same database? Well, it's... I mean, I want to just preface... This is the word integrated means something more than just being located in the same office, that that fourth factor doesn't mean anything if we take your position that just being there is enough, is it? Well, it's being merely present in the physical space of the office is not going to be enough, but I think to use... What is it here that you have? Whoa, whoa, whoa, whoa. What is it here that you have beyond that on the question of integration? Well, you have it on an agency computer. That's the same thing as being in the same office, isn't it? Well, no. I mean, I think we can draw a comparison to Gallant v. NLRB, which, Judge Santel, I think you wrote that opinion. There may be what ended up being a personal record, the correspondence. The correspondence that issue, which ended up being determined a personal record, was a physical letter that was stored in a cubbyhole in a credenza in the office, and I think that's entirely disanalogous to records that are saved on agency software, on an agency computer, and are accessible by other agency staff. The other accessibility from other staff is very limited according to the JA, the record here. You had to be either sitting at the computer or at least be signing on as the creator before you could have access, didn't you? Well, you had to. You couldn't just go anywhere in the office and hit a database and get the integrated information. You had to go... So, that's what the government has argued, but that's no different, I think, in most agencies with respect to the ability of IT staff, for example, to access the contents of a computer. Not all agencies have a magic button that allows them to access something like Microsoft Outlook email records, which I think we would all acknowledge are well-established as agency records. Some agencies, for example, the Internal Revenue Service, at least previously, had to physically copy the hard drive of a computer in order to Whether they've changed that practice, I'm not sure, but that would seem to, along your line of thinking, Your Honor, cut against integration, but I'm not sure that that makes sense as an outcome. So, long as something is on the agency computer and is something that could be accessed by others, that integration aspect of the fourth birth factor is met. Thank you. Please, Judge Rao. Sorry. Sorry. I mean, under that reasoning, then, is anything on a person's computer integrated into the agency's records just because it's on a computer and so, therefore, you can go find it somewhere? I mean, is that sort of the implication of your argument? Would there be anything on an agency employee's computer that would not be an agency record? Well, I think that if you had something on the local drive, say, on your desktop, for example, that could be a distinguishing element, right? A distinguishing fact. How could that be a distinguishing fact where the agency owns your computer and its hard drive? So, you don't put it on the network, but you have it on your C drive. I mean, that can't be the Moreover, even if that were enough with respect to integration, all the other aspects of the BRCA factors or if we're in DNA totality of the circumstances, all of the other considerations about the creation, possession, control, and use of this record that's located, say, it's a birthday card that you've typed out and saved on your hard drive. All those other aspects are going to come into play, as well as the all-important consideration that you purposely created that record for personal purposes in a way that that sort of aspect is absent from internet browsing history records. And moreover, looking at Kissinger, for example, and also CEI versus Office of Science and Technology Policy, the idea that you, the employee, have a superior claim of right over that record to call it your property, even though it's being used in a minimalist way by expending agency resources and stuff. That sort of consideration is completely absent from internet browsing history records. An employee or an official can't claim his internet browsing history records as his and walk out the door, as Secretary Kissinger did, with his notes in Kissinger. So, I think those sorts of considerations would... But then is the only reason the employee can't do that because the agency has a practice of capturing those browser histories? Well, that may be... I mean, that seems to be a big part of your argument. Yeah, and moreover, and this gets, I think, back to the first Berka factor, which I was discussing with Judge Sentelle at the outset. That also speaks to intent to retain control. Here, we had the agency doubling the retention period from the defaults. They obviously understood that there was some importance to internet browsing history records to keep them within the agency, at least for some period of time. Otherwise, they wouldn't have done anything. They would have just kept the automatic retention settings, the ones that were set by the manufacturers. Instead, they took the proactive step of expanding more than doubling those retention periods. Okay. I want to make sure my colleagues don't have any further questions for you at this time, and we'll... Thank you, Your Honor. We would ask that this circuit reverse the district court and hold that the records at issue are subject to agency control and disclosure under FOIA. Thank you. Mr. Mulvey, we'll give you a bit of time for rebuttal, but we'll hear from the government now. Mr. Phan? Good morning, Your Honors. May it please the court, Dennis Phan on behalf of the United States. I just wanted to pick up on one discussion that they had about the yellow telephone slips that were the subject of Bureau of National Affairs. This case really is even easier than Bureau of National Affairs along three metrics, and I want to point these out in turn. They have to do with what my colleague noted are the creation, possession, and use of a record that this court has often found significant. As you know, Bureau of National Affairs, the documents there were created solely as a personal convenience. They were kept sometimes, but often thrown away, and they weren't really used in the course of any agency decision-making. Here, the internet browsing histories are created solely as a technological byproduct of using the internet. If you're using the internet at home on your web browser, you're going to create a web browsing history. If you use it at work, you create a web browsing history. In the same way, they're routinely deleted. In fact, there are deletion periods in which they have to be deleted after a certain amount of time with respect to browsing histories. Finally, in terms of use, browsing histories are far less useful than the telephone slips were. You could go your entire career within a government agency without opening up your browsing history. Back in the day, if you didn't have telephone slips, you couldn't really run an agency without them because you wouldn't know who called, when they had called, how to get them to call back, and you'd be sitting at your phone all day, essentially, waiting for the next call to come in. Along each of those metrics, this case really is easier creation, retention, and use. This case is far easier than Bureau of National Affairs. I think that case and that binding circuit precedent easily covers the situation that we have here. So I have a question. You start out your brief by saying, because officials in a technical sense caused the creation of browsing histories simply by using the browsers, and then go on to the second aspect of the tax analyst's framework. I'm just wondering why it's self-evident under the first prong of the tax analyst's framework for a couple of reasons. You might well say, look, we had an easier argument under the second prong, and that's why we focused on that. I the conceptual reality of what we're dealing with for purposes of our analysis. Is it right that a browsing history... A couple of questions. First, is a browsing history a record that always exists as opposed to one that's created upon request? In which event, that's the creation of a record rather than the existence of a record? FOIA doesn't cover creation of new records. It covers existence of preexisting records. And the second somewhat related question is, is the browsing history something that exists? I know you can find it on a computer, on a government computer, but does the browsing history exist in the government, or is it something that the browser company has, and then the particular user can then just commission when they want to? So it's like an offsite, something that's kept somewhere else, but can be brought into the government's The best way to think about this, if you remember, they're the best analogy for this. If you think back in the day of before there were computers, and you went to a library, and you had to get one of those index cards with a short stubby pencils and write down reference call numbers, and you went through the catalogs, you're like, what's this book? What's that other book? And you kind of scroll down a few numbers. That's the best way to think about this. I mean, this is kind of you having some type of notation that says, hey, I went to Google yesterday, and you write down Google as the URL. So they are on government. This is metaphysical, and I'm not sure that it's going to ultimately matter to the disposition of the case. But even on that analogy, you're the one who's writing down the things that you're asked to be found in the stacks. But it would be different if you just said to a librarian, here's the five books I want. And then you ask the librarian, oh, what are the five books I want? I wanted. And then the librarian, he says, oh, I wrote them down. Here's what I wrote down. Those are two different things. That is entirely right. I mean, the browser histories do exist. I guess maybe taking your questions more directly, the browser histories do exist on government devices and on government computers. That's sort of the way they function. They don't exist off-site in some ether in the cloud. Not on the cloud somewhere. Which I don't know how to treat that. And the second answer is, in terms of how they're created, you're right. I mean, your computers create these, and they create these to make themselves more functional. So that when you type in geo into the search bar, it says, wow, Judge Srinivasan goes to Google a lot. So it will autofill Google into the search bar. You could, I mean, not on many government devices, because most government devices, your ability to change settings is highly constrained. But on a lot of devices, you could turn off your browsing history. You could have no browsing history. You could function perfectly well even without one. So in that sense, there's some very small element of choice. And we didn't argue below that these weren't created or obtained in a technical sense. And we didn't press that argument, which is why we haven't done so here. But I certainly understand the distinction where you have documents that somehow sort of just, as you might think of them, appear onto your computer. I mean, computers kind of run all sorts of things on the background that might create files or create different versions of things that you don't even know about, and you have no choice about. But I think that only underscores why the agencies aren't really exercising any degree of control here in the relevant sense. Thank you. Mr. Phan, I was interested in this argument about whether the district court should have dismissed for lack of subject matter jurisdiction here. And in going through the cases, I mean, there seems to be some tension in how we talk about this, you know, establishing that these are agency records as part of the jurisdictional inquiry or not. Because there are cases that suggest it goes to the district court. But then, of course, we have that footnote in taxed analysts, which say, well, you know, the government has the burden of showing that it is not an agency record. So I'm wondering, how should we think about that issue? How should we reconcile those tensions? Yeah, I'm not sure when exactly this sort of becomes jurisdictional or not. I mean, if you asked an agency for all the documents in the possession of some private company, I mean, I'm sure we would say, like, that's not a FOIA request at all. Like what you've provided doesn't sound like a FOIA request. That sounds like you want the agency to go subpoena some private company. But I don't think it matters here. And I don't think the court needs to decide because ultimately, if it's not an agency record, there's both no cause of action or claim under FOIA, and there's no jurisdiction. So I think those issues sort of collapse, because FOIA at least only provides jurisdiction for FOIA claims. Maybe it collapses in this case, but conceptually, it could certainly make a difference over the run of cases. And if it is a jurisdictional inquiry, then it would be the case that the plaintiff has to demonstrate that it's an agency record, right? Because the plaintiff has the obligation of demonstrating jurisdiction. Yeah, generally, I think that's right. And again, I think the only cases it does matter are the sort of, you know, the cases that I can think of as are absurd cases, right? Where you say, like, I want the documents of the State Department of Education, and you file a FOIA request with the US Department of Education, we might say that, well, that's not a FOIA request at all, because you haven't even asked an agency for something that would be an agency record. And the attempt to sue on the basis of that, we might say, well, there's no FOIA request that could be the basis of jurisdiction. And in any event, like I said, I think this case, at least, is fact specific enough where it needs to be resolved as a factual matter on declarations. And that's what the district court did. So I think at least in this case, as your Honor mentioned, it's not a wavelength. Whether it's jurisdictional or not, would go to whether we have to notice it on our own, wouldn't it? So for example, if you had a case in which the government, for whatever reason, didn't make an argument that the requested matter didn't qualify as an agency record, but then just went right straight to the exemptions and said, don't worry about it, because it fits squarely within an exemption, then if it goes to jurisdiction, then we on appeal would have to actually address whether it's an agency record or not, we couldn't just go to the exemption question. Right, that's that is entirely correct. You wouldn't be able to go directly to the exemption question, though. Presumably, you could also say that there's no cause of action for something that is not an agency record. Existence or non-existence of a cause of action is usually a merits question, not a jurisdictional question, isn't it? No, that's entirely right. And I guess I'm just assuming that the government in most of those cases would make some type of argument there, that there is no cause of action, and thus that totally collapses with whatever jurisdictional inquiry that might arise in these circumstances. And like I said, I don't think that this case is the one to resolve that sort of question. I don't think there's really many cases that that question would have had any significance. I guess I think I disagree that whether it is a jurisdictional inquiry is only important in the outlandish cases, because if something is jurisdictional, it's important in every case, right? So this argument that you're making that, you know, well, of course, it would only matter in the outlandish case. I don't, I don't, I don't, I guess I don't understand that argument. I understand you may not want us to reach that question in this case. But I guess I don't understand like the government's position to say, you know, jurisdiction only matters in outlandish cases. Yeah, and I think some of this has to do with functionally how a FOIA request is processed. I mean, you're going to look at the sort of face of a FOIA request. And if it doesn't even sound like it's a real FOIA request for some real things that are agency records, then the agency is well within its rights to say, look, you know, you don't, this isn't anything we can do anything about this isn't a request that we can provide records or even do a search on. And if they sue, then we would provide, you know, we would then say, perhaps that there's no jurisdiction over that suit, because there's no FOIA request for something that on its face looks like an agency record. But in this case, I think, you know, understanding what the browsing histories are depends necessarily on the sort of declarations about what the browsers do and how they function. And in that sense, it, it collapses in cases like these, where there's no cause of action, because there's no agency record for sure. It so you are there cases in which the proper disposition is 12 v one rather than 12 v six? Yeah, there's there's been suggestions that, you know, for there to be jurisdiction, it needs to be a record by the agency. And sort of that numerical sense, I'm not sure whether those cases really mean a jurisdiction in the strict sense. In there are cases where the question has arisen as to whether something is an agency or not. The reference presidential offices that things that are not agencies would not be within that would be jurisdictional, would it not? That's, that's absolutely right, Your Honor, if you'd like, like I mentioned, if you, you know, sent a FOIA request to the State Department of Education under the Federal Freedom of Information Act, and they said, well, we're not really an agency, that would certainly be jurisdictional. And that's what I mean, when I say White House counsel's office, White House counsel's presidential offices that are not agencies. So that would not be that would be jurisdictional. An attempt to get judicial or congressional records. Likewise, we're not agencies. So that would be jurisdictional, would it not? That that could be jurisdictional, Your Honor, and it could be, I mean, it depends on where those records are housed in some circumstances, but it could also be jurisdictional, for example, if there was an agency that just isn't subject to FOIA at all, in which Congress had otherwise exempted them altogether from FOIA, and you sent them a FOIA request for agency records, they could say, well, we're not one of the relevant agencies with respect to FOIA. And so there are maybe, you know, maybe I've overstated it a bit. I mean, there could be cases where the jurisdictional inquiry matters to some degree. But in this case, the real question is, are these agency records? And they simply aren't. And so that's an interesting argument, because if it is just you admit that it's jurisdictional, whether something is an agency or not, and there are government entities that are not agencies within the meaning of FOIA, then shouldn't it also be jurisdictional whether something is a record? Right? Because that term goes together agency record. It's not. So if the agency component of it is jurisdictional, why wouldn't the record component of it also be jurisdictional? Um, I mean, we'd be happy if this court affirmed on the basis that there was no jurisdiction in district court. You know, the question of whether something is an agency tends to be a little bit more clean cut than some of the questions of whether something is a record. We think the question of whether there is a record in this case, in particular, happens to be fairly straightforward and decided based on Bureau of National Affairs. But I see my time has elapsed. And unless there are further questions, we urge you to affirm. Thank you, Mr. Phan. Unless my colleagues have further questions for you, we'll head for Mr Mulvey for his rebuttal. Mr Mulvey will give you two minutes for rebuttal. And we've lost him again. No, I'm back. I just need to unmute myself, Your Honor. Um, thank you. I would like to add one point on the question of jurisdiction. Judge Rao, you had mentioned that, um, at least to subject matter jurisdiction, the question of whether a record is an agency record, um, if that's jurisdictional, uh, or rather if the question of whether an agent, a government entity is an agency may be just as jurisdictional as the question of an agency record. If you look at Kissinger, which is where this three part, uh, aspect of jurisdiction is kind of spelled out, um, you would have to add to that list the question of whether of a record has been unlawfully withheld, whether or not an exemption has been properly applied. Um, that would need to be jurisdictional as well. And if that were the case, it would throw a whole FOIA, um, uh, into, into an entire mess because it would destroy like that. You mentioned the footnote in tax analysts that an agency bears the burden of demonstrating, uh, that it, that it has lawfully withheld the records. All of that would be thrown into disarray if, uh, we were dealing with 12B1 because the burden would be on a plaintiff requester to demonstrate, um, at the outset, uh, that not only is the, the entity in receipt of a FOIA request, an agency for purposes of FOIA, and that it has control over the records, um, but that, uh, a particular statutory exemption has or has not been, uh, been properly applied. And I don't think that makes much sense. I think a lot of the confusion, um, that has, uh, arisen, and I'm not quite sure why the government in this case, uh, decided to move to dismiss under 12B1 because I, there is not one single example, uh, in, in this circuit that I can think of, uh, of a, of a case dealing with the question of whether an entity is subject to the FOIA or whether records are, um, agency records that's been decided, um, in terms of subject matter jurisdiction. It's always a merits question. Um, a lot of it stems from just ambiguity, uh, in, in the language of the FOIA itself. It uses the term jurisdiction, but as the district court here, uh, and as the district court in cause of action versus internal revenue service, which is an um, uh, to the panel here to review for this question of jurisdiction, it's used ambiguously. Um, and appellate's position and the decision of the court below, um, was that jurisdiction here really doesn't mean the power of the court to hear a well pleaded FOIA claim. Um, but rather, uh, jurisdiction here speaks to the limits, uh, to the limits of the courts for medial power to provide a certain type of relief. So if a record isn't an agency record or if an entity isn't an agency, the court can't order disclosure, um, of, of anything. Okay. Uh, turning to thank Mr. Mulvey. Thank you. Let me, let me make sure my, um, colleagues don't have further questions for you. I think we've gone quite far enough. Okay. Thank you. Uh, thank you, Mr. Fan. We'll
judges: Srinivasan, Rao, Sentelle